IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Virgil Culbreath, # 306351, ) | |
| ) | |
| ) | Civil Action No. 6:15-200-SB-KFM |
| Petitioner, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Kenneth B. Weedon,[1] ) | |
| ) | |
| ) | |
| Respondent. ) | |
| ) | |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the district court.

**BACKGROUND**

The petitioner is currently incarcerated at the Walden Correctional Institution in the South Carolina Department of Corrections ("SCDC"). The petitioner was indicted by the Edgefield County Grand Jury in June 2004 for drug trafficking (app. 1048-49). Martin C. Puetz represented the petitioner on the charge. A jury trial was held November 17–19, 2004, before the Honorable Doyet A. Early, III, South Carolina Circuit Judge. The jury found the petitioner guilty as charged (app. 544). The judge sentenced the petitioner to fifteen years in prison. Immediately after sentencing, the petitioner moved for a new trial

---

[1]The Clerk of Court is directed to change the respondent's name from "Weadon" to the correct spelling of "Weedon" in the caption of this case.

and also requested additional time, which the judge allowed (app. 547A).  The petitioner's trial counsel filed a written motion for new trial on November 29, 2004 (app. 849–52).  On January 24, 2005, the petitioner's trial counsel filed a brief in support of the motion for a new trial (app. 552–64).  The State filed its response on February 11, 2005 (app. 565–67).  The petitioner's trial counsel also submitted an affidavit from the petitioner (app. 569), a brief (app. 568–84), and exhibits (app. 585–99).  By order dated March 30, 2005, and filed on April 19, 2015, Judge Early denied the motion (app. 603–07).  Trial counsel filed a supplement to the motion on April 27, 2005.  The petitioner appealed.

***Underlying Case Facts***

The South Carolina Court of Appeals summarized the general facts of the case as follows.  The petitioner was indicted in 2004 on one count of trafficking crack cocaine and one count of distribution of crack cocaine within the proximity of a school or park. Both counts arose from an April 30, 2004, controlled sale to a confidential informant.

At trial, the State called the confidential informant, Kontay Gaines, as a witness.  Gaines testified he had been arrested several times for selling drugs and incarcerated twice. Gaines further stated that after he was arrested in November 2003, he told law enforcement officials he could buy drugs from the petitioner.  The petitioner did not object to this testimony.  The Solicitor then asked Gaines how he knew the petitioner but instructed him not to talk about any business transactions.  The petitioner's counsel moved for a mistrial, contending the term "business transactions" inferred drug transactions.  The trial court denied the motion.  Before the jury returned to the courtroom, the Solicitor specifically instructed Gaines not to talk about any prior drug transactions with the petitioner.  The petitioner's trial counsel did not object to this testimony.

During direct examination, Gaines testified he met the petitioner in 1994 and that the petitioner dated his stepsister. Gaines then detailed the controlled sale on April 30, 2004, from the petitioner.  Gaines explained he met with law enforcement officers at the

airport where the officers searched Gaines and his vehicle. The officers provided Gaines with $3000 and a beeper. Gaines went to the petitioner's residence and arranged to purchase three ounces of crack cocaine for $3000. Once Gaines left the petitioner's residence, the officers contacted Gaines and instructed him to meet them at a nearby church. The officers searched Gaines and the vehicle, and changed the battery in the beeper. Gaines then drove to a restaurant parking lot to wait for the petitioner's call.

Subsequently, the petitioner pulled up next to Gaines and told Gaines to follow him. Gaines followed the petitioner to a house in Edgefield. Once inside, the petitioner explained he could not get the three ounces Gaines wanted but gave Gaines a paper bag containing two ounces of crack cocaine. Gaines paid the petitioner $2000, left the house, and drove to a prearranged location to meet with the officers. He turned the crack cocaine and remaining $1000 over to the officers (app. 648-49). *State v. Culbreath*, 659 S.E.2d 268, 270 (S.C. Ct. App. 2008).

***Direct Appeal***

Appellate Defender Eleanor Duffy Cleary of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, represented the petitioner on appeal. Appellate counsel filed a final brief of appellant in the South Carolina Court of Appeals on June 19, 2007, and raised the following issue:

> Whether the trial court erred in refusing to grant a mistrial after the State's key witness mentioned several times prior drug dealings with appellant?

(Doc. 23-7 at 3).

The State filed its final brief on June 7, 2007 (app. 631–44). The South Carolina Court of Appeals affirmed by published opinion issued March 8, 2008 (app. 647–51). The petitioner did not file a petition for rehearing and did not seek certiorari from the Supreme Court of South Carolina. The South Carolina Court of Appeals issued the remittitur on April 3, 2008 (doc. 23-8).

***PCR***

On June 29, 2012, the petitioner filed an application for post-conviction relief ("PCR") in which he raised the following claims:

(a) Ineffective assistance of trial counsel;

(b) Ineffective assistance of appellate counsel.

(app. 654).

The respondent filed the State's return on December 19, 2008, and moved to dismiss based on the non-specific nature of the allegations (app. 659–61). Trisha A. Blanchette represented the petitioner at PCR. On January 8, 2009, PCR counsel filed a response in opposition to dismissal and offered the following claims:

> 1. Ineffective Assistance of Counsel
>
>> a. Trial counsel was ineffective for his failure to properly prepare and investigate prior to trial.
>>> i. Failure to obtain a preliminary hearing.
>>> ii. Failure to obtain a complete copy of discovery, the indictments, and a copy or transcript of the audio/video recordings.
>>
>> b. Trial counsel was ineffective for his failure to make proper objections to discovery violations in order to preserve such issues for appeal.
>>> i. Failure to object regarding his receipt of the indictments on the day of trial.
>>> ii. Failure to object when he was not told that the co-defendant would be a state witness prior to the day of trial.
>>> iii. Failure to object regarding his failure to receive a copy or transcript of the audio/video evidence.
>>> iv. Failure to object when the State introduced statements not previously provided to the defense.

4

> c. Trial counsel was ineffective for his failure to make contemporaneous objections to hearsay, prior bad act, and bad character testimony.
>
> d. Trial counsel was ineffective when he opened the door to prior bad act testimony from the confidential informant.
>
> e. Trial counsel was ineffective for his failure to properly object to the chain of custody and cross-examine the State's chemist when the illegal substance reported on the chain of custody and in the reports did not match the substance introduced into evidence.
>
> f. Trial counsel was ineffective for his failure to object to the Solicitor's closing argument; specifically, failure to object to the Solicitor's vouching for a State witness.
> g. Trial counsel was ineffective for his failure to object to the jury instructions handed down by the Court.
>
> 2. Ineffective Assistance of Appellate Counsel (Eleanor Duffy Cleary, Esquire)
>
>> a. Appellate counsel was ineffective for her failure to raise meritorious issues on appeal.
>> i. Failure to raise Batson challenge.
>> ii. Failure to raise defense counsel's and Applicant's motion for a continuance.
>> iii. Failure to raise chain of custody.
>> iv. Failure to raise motion for directed verdict.
>
>> b. Appellate counsel was ineffective for her failure to properly raise the issue on appeal, failure to grant a mistrial for prior bad act testimony.

(App. 662–63).

On May 11, 2010, PCR counsel filed an amendment to the application with the following additional claims:

> 1. Trial counsel was ineffective for his failure to address the procurement of the indictment and the fact that the Applicant's mother was member of the grand jury.
>
> 2. Trial counsel was ineffective for his failure to move to suppress the arrest warrant and address the reliability of the confidential informant.
>
> 3. Trial counsel was ineffective for his failure to properly prepare and utilize witness Monique (Jatawa) Watson.
>
> 4. Trial counsel was ineffective for his failure to raise or plead an entrapment defense.
>
> 5. Trial counsel was ineffective for his Failure to object to the reasonable doubt instruction since it was in conflict with the Court's charge on the trafficking statute.

(App. 666).

On September 7, 2010, PCR counsel filed an additional amendment, adding the following allegations:

> 1. Trial counsel was ineffective for his failure to fully address the inconsistencies in the arrest warrant, search warrant, booking report and surveillance report.
>
> 2. Trial counsel was ineffective for his failure to ensure that the Applicant received proper notice of the indictment and what he was called to answer, that he was apprised of the elements of the offense, and was fully informed when he decided to proceed to trial.

(App. 668).

An evidentiary hearing was held on October 11, 2010, before the Honorable R. Knox McMahon, South Carolina Circuit Judge (app. 669). At the outset of the PCR hearing, and with consent of the State, the petitioner's counsel further amended the application to include the claim that trial counsel was ineffective for his failure to file the supplemental new trial motion in a timely manner (app. 674–75). At the conclusion of the hearing, Judge McMahon requested proposed orders from both parties (app. 837). On February 8, 2011, the petitioner filed a motion to compel judgment (app. 925–27). An

order of dismissal denying relief was filed on April 11, 2011 (app. 929–48). The petitioner filed a motion to alter or amend on April 21, 2011 (app. 949–82). The State filed its return to the motion on October 28, 2011 (app. 984–90). Judge McMahon filed a new order of dismissal on January 13, 2012 (app. 992–1014). The respondent filed a motion for correction of clerical error on January 23, 2012 (app.1015–16). By order dated January 31, 2012, and filed on February 10, 2012, Judge McMahon granted the motion and directed that reference be made to the motion to alter or amend, the return to that motion, and clarified that the January 2012 order superseded the prior order issued in April 2011 (app. 1018–20). A corrected order of dismissal was filed on February 10, 2012 (app. 1026–1045). The petitioner appealed the denial of relief.

### *PCR Appeal*

On August 14, 2012, the petitioner's appeal counsel, Appellate Defender Dayne C. Phillips of the South Carolina Office of Indigent Defense, Division of Appellate Defense, filed a petition for writ of certiorari in the Supreme Court of South Carolina raising the following issues:

> I. Did the PCR court err in finding that trial counsel conducted a reasonable investigation in preparation for Petitioner's trial where trial counsel admitted: he was not ready to try the case; his ultimate trial strategy was not to try the case; he did not review the indictments prior to trial; and he did not receive all of the discovery from the State until the morning of the trial?
>
> II. Did the PCR court err in finding that, although trial counsel's performance was deficient for opening the door to inadmissible testimony from the confidential informant, Petitioner was unable to prove prejudice where the inadmissible testimony would have resulted in a mistrial if it was elicited by the State?
>
> III. Did the PCR court err in finding that trial counsel provided effective assistance of counsel where trial counsel failed to move to suppress the drug evidence that had significantly changed in form while in the State's possession?

(Doc. 23-9 at 2).

The State filed a return on December 28, 2012 (doc. 23-10). The case was thereafter transferred to the South Carolina Court of Appeals. *See* Rule 243(I), SCACR (allowing transfer of post-conviction relief appeals to the South Carolina Court of Appeals for disposition). On August 25, 2014, the Court of Appeals denied the petition for writ of certiorari (doc. 23-11). The remittitur was issued on September 22, 2014 (doc. 23-12).

## FEDERAL PETITION

On January 20, 2015, the petitioner filed his Section 2254 petition (doc. 1). On April 30, 2015, the respondent filed a motion for summary judgment (doc. 22) and a return and memorandum (doc. 23). By order filed on the same date, pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), the petitioner was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion (doc. 24). After being granted two extensions of time, the petitioner filed a response (doc. 37) in opposition to the motion for summary judgment on August 7, 2015.

In his federal habeas corpus petition, the petitioner makes the following claims:

> **Ground one:** Did the State Court's err in finding trial counsel conducted a reasonable investigation?
>
> **Supporting Facts:** Through trial counsel's own admission the record is clear that trial counsel was not prepared to try petitioner's case and did not want to trial at that time, counsel had not reviewed petitioner's indictments prior to trial and had not received all of the discovery materials until the morning of trial. The petitioner has clearly shown the lack of investigation and resulting prejudice throughout the State court proceedings.
>
> **Ground two:** Did the State Courts err in finding petitioner failed to show prejudice under Strickland v. Washington?
>
> **Supporting Facts:** The PCR Court's findings determined that petitioner's trial counsel opened the door to inadmissible testimony; the petitioner has clearly shown prejudice in the State court proceedings in that the inadmissible testimony would have resulted in a mistrial if it was elicited by the State.

8

> **Ground three:** Did the State courts err in finding that trial counsel's performance was not deficient for failing to move to suppress drug evidence?
>
> **Supporting Facts:** Prior to and during trial counsel failed to move to suppress crucial drug evidence allegedly received from a confidential informant during an alleged controlled buy that did not fit the description at trial of the drugs documents in any of the police reports, warrants or indictments. The State courts conceded that counsel was ineffective for failing to argue the change of form and failing to move to suppress said evidence in the court's ruling on petitioner's Rule 59(e) Motion.
>
> **Ground four:** Was appellate counsel ineffective for failing to object issue that was raised nine (9) times at his PCR hearing?
>
> **Supporting Facts:** Pursuant to Rule 59(e) and the U.S. Supreme Court ruling in Martinez v. Ryan, 132 S.Ct. 1309 the petitioner believes he may obtain federal habeas review of a procedurally defaulted claim by showing cause for the default and prejudice. The petitioner's attorney's error on direct review may provide cause to excuse a procedural default if appointed counsel on direct appeal is ineffective. The State prisoner has been denied fair process and the opportunity to comply with State procedures and obtain adjudication on the merits of his claim.

(Doc. 1 at 5-10).

## APPLICABLE LAW AND ANALYSIS

### *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and

ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### *Exhaustion*

The respondent acknowledges that Grounds One, Two, and Three are exhausted (doc. 23 at 16). As to Ground Four, the respondent writes: "Ground Four is simply not cognizable, thus, exhaustion is not applicable" (*id.*).

### *Ineffective Assistance of Counsel*

To be entitled to relief on an ineffective assistance claim, the petitioner had to have shown in state court that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that but for counsel's error, the result of that proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984). *Strickland* does not guarantee perfect representation, only a "'reasonably competent attorney.'" *Id.* at 687 (quoting *McMann v. Richardson*, 397 U. S. 759, 770 (1970)). There is a strong presumption that counsel rendered adequate

10

assistance and exercised reasonable professional judgment in making all significant decisions in the case. *Id.* at 690.

The review of ineffective assistance of counsel claims in federal habeas is not simply a new review of the merits; rather, habeas review is centered upon whether the state court decision was reasonable. *See* 28 U.S.C. § 2254(d).  Additionally, each step in the review process requires deference—deference to counsel and deference to the state court that previously reviewed counsel's actions:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 104 (internal citations omitted).

### *Ground One*

In Ground One of his petition, the petitioner alleges that his trial counsel was ineffective for failing to conduct a reasonable investigation (doc. 1 at 5).  The petitioner complained during the PCR case that trial counsel was not prepared for trial, that he had not interviewed witnesses, had not made relevant pretrial motions, and that the petitioner had expected counsel to request and receive a continuance (app. 699–700).  He complained counsel had not reviewed the indictment, that the co-defendant being listed as a witness was a surprise, that counsel did not view the tape of the drug buy until the time of trial, and did not have rap sheets for the confidential informant (app. 702–03).

At the PCR hearing, trial counsel testified:

11

> [T]here wasn't a great deal of actual discovery because of the fact that it was a buy/bust; that is, he was arrested shortly - - that is, Mr. Culbreath - - was arrested shortly after he left his having sold the 50 grams approximately to Kontay Gaines and getting the 2,000 or $3,000, whatever the dollar amount was. He was arrested within a matter of minutes after that.

(App. 794).

Counsel agreed with the petitioner's assertions that he was not able to listen to the tape or review the indictment until the day of trial (app. 796, 801). However, he testified again that he investigated how the sale occurred and was successful in obtaining a directed verdict on the proximity charge (app. 799, 802). Counsel also testified that they knew they were going to trial, but they did not want to (app. 805). He testified that while he did not have access to the tape of the "buy" prior to trial, he did review the tape[2] (app. 808–09). He testified he did not see a basis for suppression of the drugs (app. 809–10).

The PCR judge found that the petitioner failed "to point to any specific matters counsel failed to discover" and failed to show any "evidence at the PCR hearing that counsel could have found that would have been likely to have any outcome more favorable to" him (app. 1038–39). The PCR judge correctly found that it was the petitioner's burden to show deficient performance and prejudice. *Strickland*. Moreover, the purpose of the *Strickland* test is circumscribed to address actual prejudicial error in representation, not to allow for a critique of steps and non-prejudicial missteps:

> The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

466 U.S. at 697.

---

[2] The transcript from the trial reflects a detailed cross-examination concerning the tape and taping process (app. 254–69).

In short, it is unnecessary to delve into each instance in detail and determine "deficient performance" when the record wholly and clearly supports that the petitioner failed to show prejudice. *Strickland* itself demonstrates that the petitioner's argument — that counsel's admissions that he did not wish to go to trial at the time and that he had not reviewed the indictment and discovery, *i.e.*, the tape, until just before trial (doc. 1 at 5) carries his burden of proof to establish prejudice — is an incorrect interpretation of the *Strickland* test. Nevertheless, the PCR judge found the petitioner could not show prejudice due to the overwhelming evidence of guilt as follows:

> [E]ven if the Applicant had been successful in proving that Counsel provided deficient representation, he is unable to prove resulting prejudice. This Court notes that this was a buy-bust situation. This Court notes that the money used in the case was recovered, as were the drugs. Also presented by the State was the testimony of the confidential informant, a co-defendant, and a statement by Applicant himself. This Court finds that his is an overwhelming amount of evidence Applicant's guilt.

(App. 1043). These findings are supported by the trial record (*see* app. 87–98 (Kontay Gaines' description of his purchase of three ounces of crack cocaine from the petitioner), 328–35 (testimony of Clifton Bush indicating that "THE GUY" had money in his hand and was counting it out to petitioner), and 373–87 (testimony of Investigator Roosevelt Young on chain of custody, the interrogation of petitioner, and the petitioner's statement)). Thus, the state court record supports the factual determinations, and the PCR court's ruling was a reasonable application of the *Strickland* test. Accordingly, this ground has no merit and should be dismissed.

***Ground Two***

In his second ground, the petitioner claims that the PCR court's findings prejudiced him because his counsel opened the door to inadmissible testimony (doc. 1 at 7).

13

The petitioner also complained at PCR that counsel should not have posed questions on cross-examination of the confidential informant, Gaines, that elicited a response about his prior drug dealings with him. Noting the Court of Appeals' ruling that counsel opened the door to the evidence, the PCR court found counsel's performance deficient in this regard (app. 1041; *see also* app. 651). However, the PCR court also found the petitioner was not entitled to relief as he failed to prove prejudice (app. 1041). The PCR court's ruling reflects a reasonable application of the *Strickland* test.

It is an established principle that matters of evidentiary error such as admission of improper character evidence are subject to a harmless error analysis. *See State v. Parker*, 433 S.E.2d 831, 833 (S.C. 1993) (admission of improper character evidence not reversible "when guilt is conclusively proven by competent evidence, such that no other rational conclusion could be reached"). *Accord United States v. Byers*, 649 F.3d 197, 211 (4th Cir. 2011) (similarly recognizing under federal rules that such errors may be considered harmless). Though the instant claim is controlled by the *Strickland* test, the fact that the error could be deemed harmless in a direct appeal undercuts the petitioner's suggestion here that he would have been entitled to a mistrial had the evidence been offered by the State (*see* doc. 1 at 7). This is especially so where such evidence is not always inadmissible in drug cases where intent is at issue. *See State v. Wilson*, 545 S.E.2d 827, 830 (S.C. 2001) ("evidence of a prior drug transaction is relevant on the issue of intent") (citing *State v. Gore*, 384 S.E.2d 750 (S.C. 1989)).[3] At any rate, the matter is still one of witness credibility. As the PCR court found, trial counsel thoroughly cross-examined the witness on the his possible bias and self-serving motives (app. 1041; *see* app. 101–62).

---

[3] These state cases are on charges of possession with intent to distribute. However, the respondent notes that intent was argued, and the trial judge gave a specific instruction on intent (*See* app. 491, 524–25). The petitioner testified at trial that he was with Gaines and Bush and accepted money, but asserted he did not deal in drugs (app. 429, 446-47). As noted above, the petitioner's statement was admitted. In the statement the petitioner admitted giving two ounces of crack cocaine to Bush after Gaines made a request for purchase, though he stated to Gaines, "I am not in that game…." (app. 386).

Further, the record shows that, in closing argument, counsel repeatedly emphasized the witness' lack of credibility (app. 482–86). Moreover, the fact that the confidential informant selected the petitioner cannot be overlooked (*see* app. 82). Thus, a strategy to attack credibility—even if that strategy elicits some assertion of prior drug deals—is not patently unreasonable. *See, for example*, *United States v. James*, 487 F.3d 518, 523 (7th Cir. 2007) (finding no error where the district court allowed evidence to be considered for context and credibility when counsel did not object to testimony about defendant's prior drug deals with informant as counsel intended to impeach informant).

The PCR court found that trial counsel made a strategic decision to try to impeach Gaines. Federal habeas courts are instructed not to second guess an attorney's trial strategy and tactics. *See Goodson v. United States*, 564 F.2d 1071, 1072 (4th Cir. 1977)(*per curiam*) (involving a trial counsel's alleged failure to call a confidential informant as a witness); and *Stamper v. Muncie*, 944 F.2d 170, 178 (4th Cir. 1991) ("Those tactics were reasonable. . . . Stamper's recasting of the pros and cons of trial counsel's decision amounts to Monday morning quarterbacking.").

In summary, the state court records support the PCR court's factual findings, and his ruling reflects a reasonable application of the *Strickland* test. The petitioner is not entitled to relief as to Ground Two. *See Carter v. Lee*, 283 F.3d 240, 249 (4th Cir. 2002) ("Because it may be tempting to find an unsuccessful trial strategy to be unreasonable, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" (quoting *Strickland*, 466 U.S. at 689) (additional internal citations omitted)). The petitioner has done nothing to rebut this presumption. He has failed to establish that trial counsel's actions fell outside the wide range of reasonable, professionally competent assistance. *See*

15

*Strickland*, 466 U.S. at 689 ("[C]ounsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case.").

### Ground Three

The petitioner claims counsel was deficient fo failing to suppress drug evidence (doc. 1 at 8). The petitioner complained at PCR that trial counsel should have questioned the state drug analyst on her assertions the drugs had melted. He relied upon an article that reflected the melting point for crack cocaine was 197 degrees (app. 734). The petitioner contended the analyst could have been cross-examined concerning her testimony that the drugs melted (app. 734). The PCR court found, however, that trial counsel reasonably did not object because the chain of custody was not deficient. Therefore, the petitioner has failed to show how his counsel was ineffective or prejudice in this regard (app. 1042). The ruling is well-supported by the record.

At trial, the SLED analyst who tested the drugs testified the substance was 50.44 grams of crack cocaine (app. 293). The analyst further testified that the material introduced at trial was the material she had tested; however, it had melted as a result of being sealed in the evidence bag for a significant period of time (app. 294–26). Regardless of at what point the drugs melted, the State presented evidence of an adequate chain of custody because the substance tested was the substance seized as a result of the buy/bust. Thus, the PCR court's order of dismissal shows a reasonable determination of facts and a reasonable application of the *Strickland* test and this claim fails. *See Knowles v. Bazzle*, No. 2:06-cv-1424-GRA-RSC, 2007 WL 1594412, at *8 (D.S.C. June 1, 2007) ("The record supports Judge Miller's determination that Petitioner failed to demonstrate a problem with the chain of custody, which in turn supports his determination that there was no error by counsel and no prejudice to Petitioner. The state court decision cannot be said to be contrary to clearly established federal law nor that it involved an unreasonable application of clearly established federal law.").

***Ground Four***

In his final ground for relief, the petitioner claims ineffectiveness of PCR appellate counsel (doc. 1 at 10). This claim is not cognizable in the instant action as it is specifically barred by statute. 28 U.S.C. § 2254(i) provides: "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." *See also Martinez v. Ryan*, 132 S.Ct. 1309, 1320 (2012) (noting statutory bar for a claim of ineffective assistance of counsel as a ground for relief). To the extent the petitioner raises a claim that ineffective assistance of PCR appellate counsel may allow for excuse of the default of certain PCR issues, he is mistaken. The Court in *Martinez* specifically left in place the prohibition in *Coleman v. Thompson* that allegations of ineffective assistance of collateral appeal counsel could not provide excuse to avoid a default. *Id.* at 1320 ("The rule of *Coleman* governs in all but the limited circumstances recognized here."); *Coleman v. Thompson*, 501 U.S. 722, 757 (1991) ("Because Coleman had no right to counsel to pursue his appeal in state habeas, any attorney error that led to the default of Coleman's claims in state court cannot constitute cause to excuse the default in federal habeas."). Moreover, since the respondent concedes that Grounds One, Two, and Three are exhausted (doc. 23 at 16), the petitioner cannot avail himself of the holding in *Martinez v. Ryan*. Consequently, Ground Four will not support any relief, either as a free-standing claim or as an argument on cause to excuse a default.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 22) be granted. It is also recommended that the District Court deny a Certificate of Appealability. The attention of the parties is directed to the Notice on the next page.

s/ Kevin F. McDonald
United States Magistrate Judge

January 27, 2016
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court
United States District Court
300 East Washington Street — Room 239
Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).