IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Virgil Culbreath, #306351,        )<br>                                                  )<br>                    Petitioner,    )<br>                                                  )     Civil Action No. 6:15-200-SB<br>v.                                              )<br>                                                  )                **ORDER**<br>Kenneth B. Weedon,                 )<br>                                                  )<br>                    Respondent.  )<br>_____ ) | |

This matter is before the Court upon Petitioner Virgil Culbreath's ("Culbreath" or "the Petitioner") pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On April 30, 2015, the Respondent filed a motion for summary judgment, and after being granted several extensions of time to respond, the Petitioner filed a response in opposition on August 17, 2015, and another response on September 10, 2015. Pursuant to 28 U.S.C. 636(b)(1)(B) and the Local Rules for the District of South Carolina, the matter was referred to a United States Magistrate Judge for review. On January 27, 2016, Magistrate Judge Kevin McDonald issued a report and recommendation ("R&R") outlining the issues and recommending that the Court grant the Respondent's motion for summary judgment. Culbreath filed objections to the R&R, and the matter is ripe for review.

## BACKGROUND

The Petitioner, who is currently incarcerated at the Walden Correctional Institution in the South Carolina Department of Corrections ("SCDC"), was indicted by the Edgefield County Grand Jury in June 2004 on drug-related charges. The Honorable Doyet A. Early, III, South Carolina Circuit Judge, presided over a jury trial from November 17-19, 2004, at

which Martin C. Puetz, Esq., represented the Petitioner. The jury found the Petitioner guilty, and Judge Early sentenced him to 15 years in prison.

Immediately after sentencing, the Petitioner moved for a new trial and requested additional time, which the judge allowed. Trial counsel filed a written motion for a new trial on November 29, 2004, and on January 24, 2005, trial counsel filed a brief in support of the motion. The State filed its response on February 11, 2005. The Petitioner's trial counsel also submitted an affidavit from the Petitioner, a brief, and exhibits. By order dated March 30, 2005, Judge Early denied the motion. Trial counsel filed a supplement to the motion on April 27, 2005, and the Petitioner appealed.

Appellate Defender Eleanor Duffy Cleary of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, represented the Petitioner on appeal and filed a final brief with the South Carolina Court of Appeals on June 19, 2007, raising the following issue: "Whether the trial court erred in refusing to grant a mistrial after the State's key witness mentioned several times prior drug dealings with appellant?" (Entry 23-7 at 3.)

The State filed its final brief on June 7, 2007. On March 8, 2008, the South Carolina Court of Appeals affirmed by published opinion. State v. Culbreath, 659 S.E.2d 268, 270 (S.C. Ct. App. 2008). The Petitioner did not file a petition for rehearing and did not seek a writ of certiorari from the Supreme Court of South Carolina. The South Carolina Court of Appeals issued the remittitur on April 3, 2008.

On June 29, 2008, the Petitioner filed an application for post-conviction relief ("PCR") in which he raised the following claims: ineffective assistance of trial counsel and ineffective assistance of appellate counsel. (Entry 23-3 at 160.) The Respondent filed the State's return on December 19, 2008, and moved to dismiss based on the non-specific nature of

the allegations. Trisha A. Blanchette, Esq., represented the Petitioner, and on January 8, 2009, she filed a response in opposition raising the following claims:

1. Ineffective Assistance of Counsel

    a. Trial counsel was ineffective for his failure to properly prepare and investigate prior to trial.
     i. Failure to obtain a preliminary hearing.
     ii. Failure to obtain a complete copy of discovery, the indictments, and a copy or transcript of the audio/video recordings.

    b. Trial counsel was ineffective for his failure to make proper objections to discovery violations in order to preserve such issues for appeal.
     i. Failure to object regarding his receipt of the indictments on the day of trial.
     ii. Failure to object when he was not told that the co-defendant would be a state witness prior to the day of trial.
     iii. Failure to object regarding his failure to receive a copy or transcript of the audio/video evidence.
     iv. Failure to object when the State introduced statements not previously provided to the defense.

    c. Trial counsel was ineffective for his failure to make contemporaneous objections to hearsay, prior bad act, and bad character testimony.

    d. Trial counsel was ineffective when he opened the door to prior bad act testimony from the confidential informant.

    e. Trial counsel was ineffective for his failure to properly object to the chain of custody and cross-examine the State's chemist when the illegal substance reported on the chain of custody and in the reports did not match the substance introduced into evidence.

    f. Trial counsel was ineffective for his failure to object to the Solicitor's closing argument; specifically, failure to object to the Solicitor's vouching for a State witness.

    g. Trial counsel was ineffective for his failure to object to the jury instructions handed down by the Court.

2. Ineffective Assistance of Appellate Counsel (Eleanor Duffy Cleary,

3

> Esquire)
>
>> a. Appellate counsel was ineffective for her failure to raise meritorious issues on appeal.
>>> i. Failure to raise Batson challenge.
>>> ii. Failure to raise defense counsel's and Applicant's motion for a continuance.
>>> iii. Failure to raise chain of custody.
>>> iv. Failure to raise motion for directed verdict.
>>
>> b. Appellate counsel was ineffective for her failure to properly raise the issue on appeal, failure to grant a mistrial for prior bad act testimony.

(Entry 23-3 at 168-69.) On May 11, 2010, PCR counsel filed an amendment to the application with the following additional claims:

> 1. Trial counsel was ineffective for his failure to address the procurement of the indictment and the fact that the Applicant's mother was member of the grand jury.
>
> 2. Trial counsel was ineffective for his failure to move to suppress the arrest warrant and address the reliability of the confidential informant.
>
> 3. Trial counsel was ineffective for his failure to properly prepare and utilize witness Monique (Jatawa) Watson.
>
> 4. Trial counsel was ineffective for his failure to raise or plead an entrapment defense.
>
> 5. Trial counsel was ineffective for his failure to object to the reasonable doubt instruction since it was in conflict with the Court's charge on the trafficking statute.

(Entry 23-4 at 2.) Then, on September 7, 2010, PCR counsel filed an additional amendment, addition the following:

> 1. Trial counsel was ineffective for his failure to fully address the inconsistencies in the arrest warrant, search warrant, booking report and surveillance report.
>
> 2. Trial counsel was ineffective for his failure to ensure that the Applicant received proper notice of the indictment and what he was called to answer,

>that he was apprised of the elements of the offense, and was fully informed when he decided to proceed to trial.

(Entry 23-4 at 4.)

The Honorable R. Knox McMahon, South Carolina Circuit Judge, held an evidentiary hearing on October 11, 2010. At the start of the hearing, with the consent of the State, PCR counsel further amended the application to include the claim that trial counsel was ineffective for failing to file the supplemental new trial motion in a timely manner. At the conclusion of the hearing, Judge McMahon requested proposed orders from both parties. On February 8, 2011, the Petitioner filed a motion to compel judgment. On April 11, 2011, an order of dismissal was filed. Although the order denied relief, the order contained several contradictory statements. For example, on page 16 Judge McMahon stated that the Petitioner "was prejudiced as a result of counsel's failure to object to the marked money and co-defendant's statements since this evidence was used to directly tie the [Petitioner] to the drug transaction at issue." (Entry 23-5 at 110.) Judge McMahon also wrote that defense counsel was ineffective when he opened the door to highly prejudicial information from the confidential informant on cross-examination, and that the "error cannot be overlooked nor can its prejudicial impact be ignored." (Id.) Judge McMahon stated that "[a] new trial is the remedy that would have resulted if the State elicited this testimony and this Court finds that it is the proper remedy to cure the deficient and prejudicial performance of trial counsel." (Id. at 111.) Despite these statements, Judge McMahon later wrote that "although the [Petitioner] was successful in proving that his trial counsel provided ineffective representation, he is unable to prove resulting prejudice," in large part due to the "overwhelming evidence of the [Petitioner's] guilt." (Id.)

5

In light of Judge McMahon's inconsistent findings, the Petitioner filed a Rule 59 motion to alter or amend on April 21, 2011. The State filed its return on October 28, 2011. Judge McMahon issued a new order of dismissal omitting the contradictory findings but offering no explanation for the changes. The Respondent then filed a Rule 60(a) motion to correct a clerical error, seeking to alter the caption of Judge McMahon's second order to reflect that it was an order in response to the Rule 59 motion, and seeking to clarify that the second order superseded the first. Judge McMahon granted the Rule 60 motion, and a corrected order of dismissal was filed on February 10, 2012.

On August 14, 2012, appellate counsel for the Petitioner, Appellate Defender Dayne C. Phillips of the South Carolina Office of Indigent Defense, Division of Appellate Defense, filed a petition for a writ of certiorari in the South Carolina Supreme Court, raising the following issues:

> I. Did the PCR court err in finding that trial counsel conducted a reasonable investigation in preparation for Petitioner's trial where trial counsel admitted: he was not ready to try the case; his ultimate trial strategy was not to try the case; he did not review the indictments prior to trial; and he did not receive all of the discovery from the State until the morning of the trial?
>
> II. Did the PCR court err in finding that, although trial counsel's performance was deficient for opening the door to inadmissible testimony from the confidential informant, Petitioner was unable to prove prejudice where the inadmissible testimony would have resulted in a mistrial if it was elicited by the State?
>
> III. Did the PCR court err in finding that trial counsel provided effective assistance of counsel where trial counsel failed to move to suppress the drug evidence that had significantly changed in form while in the State's possession?

(Entry 23-9 at 2.) The State filed a return on December 28, 2012, and the case was thereafter transferred to the South Carolina Court of Appeals pursuant to SCACR 243(l).

On August 25, 2014, the Court of Appeals denied the petition, and the remittitur was issued on September 22, 2014.

The Petitioned filed the instant § 2254 petition on January 20, 2015, alleging the following grounds, taken verbatim from his petition:

> **GROUND ONE:** Did the State Court[ ] err in finding trial counsel conducted a reasonable investigation?
>
> **Supporting Facts:** Through trial counsel's own admission the record is clear that trial counsel was not prepared to try petitioner's case and did not want to trial [sic] at that time, counsel had not reviewed petitioner's indictments prior to trial and had not received all of the discovery materials until the morning of trial. The petitioner has clearly shown the lack of investigation and resulting prejudice throughout the State court proceedings.
>
> **GROUND TWO:** Did the State Courts err in finding petitioner failed to show prejudice under Strickland v. Washington?
>
> **Supporting Facts:** The PCR Court's findings determined that petitioner's trial counsel opened the door to inadmissible testimony; the petitioner has clearly shown prejudice in the State court proceedings in that the inadmissible testimony would have resulted in a mistrial if it was elicited by the State.
>
> **GROUND THREE:** Did the State courts err in finding that trial counsel's performance was not deficient for failing to move to suppress drug evidence?
>
> **Supporting Facts:** Prior to and during trial counsel failed to move to suppress crucial drug evidence allegedly received from a confidential informant during an alleged controlled buy that did not fit the description at trial of the drugs documented in any of the police reports, warrants or indictments. The State courts conceded that counsel was ineffective for failing to argue the change of form and failing to move to suppress said evidence in the court's ruling on petitioner's Rule 59(e) Motion.
>
> **GROUND FOUR:** Was appellate counsel ineffective for failing to raise failure to object issue that was raised nine (9) times at his PCR hearing?
>
> **Supporting Facts:** Pursuant to Rule 59(e) and the U.S. Supreme Court ruling in Martinez v. Ryan, 132 S.Ct. 1309 the petitioner believes he may obtain federal habeas review of a procedurally defaulted claim by showing

7

> cause for the default and prejudice. The petitioner's attorney's error on direct review may provide cause to excuse a procedural default if appointed counsel on direct appeal is ineffective. The State prisoner has been denied fair process and the opportunity to comply with State procedures and obtain adjudication on the merits of his claim.

(Entry 1 at 5-10.)

## STANDARDS OF REVIEW

### I. The Magistrate Judge's R&R

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. See Mathews v. Weber, 423 U.S. 261 (1976). The Court is charged with making a de novo determination of any portion of the R&R to which a specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. See 28 U.S.C. § 636(b).

### II. Summary Judgment

To grant a motion for summary judgment, this Court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The Court is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. See

8

Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

### III. Habeas Corpus

Because the Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court explained that section 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. Id. at 404-05. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in controlling cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. Id. at 405-06. A federal habeas court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies it to the facts of the particular case. Id. at 407-08. Factual determinations made by the state "shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

9

## IV.  Ineffective Assistance of Counsel

The Sixth Amendment requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense," and that such assistance be effective.  U.S. Const. Amend. VI; Strickland v. Washington, 466 U.S. 668, 686 (1984).  In Strickland, the Supreme Court held that a meritorious ineffective assistance claim must demonstrate two things: first, that counsel's performance was deficient, and second, that counsel's deficient performance prejudiced the defense. Id. at 687-98.  The first part of the test, a court's evaluation of counsel's performance, must be "highly deferential," so as not to "second-guess" the performance.  Id. at 689.  "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  Id. (internal quotation marks and citation omitted); see also Fields v. Attorney Gen. of Maryland, 956 F.2d 1290, 1297-99 (4th Cir. 1992); Roach v. Martin, 757 F.2d 1463, 1476 (4th Cir. 1985).  To establish prejudice and fulfill the second prong of the ineffective assistance test, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694-95.

## DISCUSSION

## I.  Grounds One, Two, and Three: Trial Counsel's Alleged Ineffective Assistance

As previously mentioned, the Petitioner contends as his first ground for relief that the PCR court erred by denying his claim of ineffective assistance of trial counsel based on

counsel's failure to conduct a reasonable investigation and properly prepare for trial. As a second ground, the Petitioner contends that the PCR court erred by finding that no prejudice resulted from trial counsel's elicitation of inadmissible testimony from a confidential informant, and as a third ground, the Petitioner contends that the PCR court erred by finding that trial counsel was not ineffective for failing to move to suppress the drug evidence.

With respect to the Petitioner's first ground, the Magistrate Judge reviewed trial counsel's testimony from the PCR hearing and considered the PCR court's findings. Ultimately, the Magistrate Judge agreed with the PCR court that the Petitioner had not shown that trial counsel's alleged failure to investigate and prepare for trial prejudiced the Petitioner. The Magistrate Judge also agreed with the PCR court that even though trial counsel admitted that he did not wish to go to trial and that he was unable to review the indictments and the discovery until just before trial, such admission did not show prejudice in light of the overwhelming evidence of guilt. The Magistrate Judge found that the PCR court's findings were supported by the record and quoted the PCR court's final order as follows:

> [E]ven if the Applicant had been successful in proving that Counsel provided deficient representation, he is unable to prove resulting prejudice. This Court notes that this was a buy-bust situation. This Court notes that the money used in the case was recovered, as were the drugs. Also presented by the State was the testimony of the confidential informant, a co-defendant, and a statement by Applicant himself. This Court finds that this is an overwhelming amount of evidence of the Applicant's guilt.

(Entry 23-6 at 46.)

Next, with respect to the Petitioner's second ground for relief, the Magistrate Judge agreed with the PCR court's determination that even though trial counsel's performance

11

was deficient for eliciting inadmissible testimony from a confidential informant regarding prior drug dealings, the Petitioner failed to prove resulting prejudice. The Magistrate Judge further agreed with the PCR court that trial counsel made a strategic decision to impeach the confidential informant. Finally, with respect to his third ground, the Magistrate Judge agreed with the PCR court's finding that counsel's decision not to object the drugs was reasonable because the chain of custody was not deficient.

Here, after a review of the record, the Court respectfully disagrees with the Magistrate Judge and finds that the state court's adjudication of the Petitioner's ineffective assistance of trial counsel claims involved an unreasonable application of Strickland and its progeny and was based on an unreasonable determination of the facts in light of the evidence. See 28 U.S.C. § 2254(d).

First, a review of the trial transcript and the testimony from the PCR hearing clearly indicates that the Petitioner's trial counsel was not prepared for trial. The morning of trial, counsel moved for a continuance, stating: "Judge, as it relates to my request for a continuance – and I'll be very candid with the court. This morning we've been back there. My client saw the videotape and the audiotape or heard the audiotapes for the first time this morning. We have – I have been back there trying to put my file together, have not had an opportunity to prepare cross examination of a cooperating government witness such as Mr. Gaines, nor a co-defendant Mr. Cliff Robertson who I thought wasn't going to be involved in the case upon Mr. Mizell's representation yesterday, and I learn this morning that, in fact, he may be a witness." (Entry 23-1 at 40.) With respect to the trial court's denial of his motion for a continuance, counsel testified at the PCR hearing: "I mean, I will be honest with you. I didn't want to try the case. I wasn't ready to try the case. Judge Early said,

You are going to try the case. We tried the case. I got over there and did the best I could." (Entry 23-4 at 141.) Counsel further testified that his "trial strategy was I was trying to get out of having to try it . . . by getting a continuance." (Entry 23-4 at 151.) When the continuance was denied, however, counsel's trial strategy became trying to poke holes in the state's case. (Id.)

Trial counsel further testified at the PCR hearing that he tried to schedule a preliminary hearing, but he had a conflict with the day it was scheduled, and he was unable to get it rescheduled.[1] (Entry 23-4 at 132-33.) Counsel also testified that: he did not review the indictments prior to trial because he did not receive a copy before then and did not try to receive a copy before then; he received only one of four statements made by a co-defendant and did not know the co-defendant would be testifying until the time of trial; he did not obtain the criminal record for a testifying confidential informant; he was not prepared to cross-examine the confidential informant; he did not have access to the video and audiotapes until right before trial; and he was not able to see the drugs until trial. (Entry 23-1 at 40 and 44; Entry 23-4 at 131, 133, 135, and 144.) Counsel further testified that although he met with the Petitioner two or three times prior to trial, he did not review the indictments with the Petitioner prior to trial. Despite not reviewing the indictments, counsel testified that he gave the Petitioner a copy of the statute, although the Petitioner contends that counsel did not explain it so he did not understand the charges against him.[2] (Entry

---

[1] When asked by the trial judge whether a preliminary hearing had been held, trial counsel stated: "Tried to get one and was told that I couldn't have one." (Entry 23-1 at 42.)

[2] When the trial court asked about the charges against the Petitioner at the start of trial, the following colloquy ensued:

23-4 at 30-31.) According to counsel, the solicitor at some point made a plea offer that would have allowed the Petitioner to plead to level two trafficking, which would have resulted in a "seven-year, 85 percent sentence," and counsel "begged him to take it."

---

| | |
|---|---|
| The Court: | Mr. Mizell, Mr. Culbreath is charged with trafficking crack? |
| Mr. Mizzell: | Yes, sir, Your Honor. |
| The Court: | And distribution within a close proximity. |
| Mr. Mizell: | Yes, sir. |
| The Court: | What's – tell me without having to look it up, on the trafficking crack he would get what? |
| Mr. Mizell: | Your Honor, it would be a first offense. He would get not more than 15 years or a fine of not mare than $25,000 or both. |
| The Court: | Up to 15 and 25,000? |
| Mr. Mizzell: | Yes, sir, Your Honor. |
| The Court: | And the proximity? |
| Mr. Mizzell: | It would be up to 15. |
| The Court: | Thank you. Is that your understanding? |
| Mr. Puetz: | Oh, I'm sorry? |
| The Court: | Is that your understanding? |
| Mr. Puetz: | Yes, sir. Could I get a copy of the indictments, Judge? I have never been given a copy of the indictments, and I think before I make an opening statement I need that. |
| The Court: | I've got the originals right here. |
| Mr. Maye: | Your Honor, do you have the indictment? I think it says 28 to 100 grams on there; is that correct? The trafficking indictment? I'm sorry. |
| The Court: | More than 28, less than 100. |
| Mr. Maye: | From 28 to 100 is 7 to 25 mandatory. I'm sorry. He was just looking at the general statute. It is a higher weight in this case because we allege from 28 to 100 grams. I think that's right. Yes, for a first offense it's 7 to 25 and a fine of $50,000. So, it is a 7 minimum. |
| The Court: | A minimum of 7, maximum – |
| Mr. Maye: | 7 to 25, 28 to 100 grams. |
| The Court: | Would y'all please give defense counsel a copy of the indictment, if you have one? If not, why don't you look at the original? |
| Mr. Puetz: | I need a copy, Judge, if I could. |
| The Court: | Well, it that going to hold us up right here? |
| Mr. Puetz: | No, no. |

(Entry 23-1 at 38-39.)

(Entry 23-4 at 136.) When asked whether he fully advised the Petitioner of the elements of the charges against him before the Petitioner turned down the plea offer, counsel replied: "I don't know if I sat down and said, Here is what the elements are. But given the fact that I had let him read the trafficking statute, and it's my recollection that the evidence was that it was he that was in the house with Kontay Gaines, that he did have possession of the 50 grams, you know, I felt as though he understood what the essential elements were." (Entry 23-4 at 136.)

Here, contrary to the PCR court, the Court finds that not only was counsel's performance deficient but also it resulted in prejudice to the Defendant. As an initial matter, the record indicates that the Petitioner did not receive a copy of the indictments until trial,[3] and it simply is not clear whether the Petitioner understood the nature of the charges against him before he rejected a plea offer and proceeded to trial.[4] (See Entry 23-4 at 31 and 136.) As the United States Supreme Court stated in Cole v. Arkansas, 333 U.S. 196, 201 (1948), "[n]o principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to he heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." See also Hodgson v. Vermont, 168 U.S. 262, 269 (1897) ("[I]n all criminal prosecutions the accused must be informed of the nature and cause of the accusation against him; that in no case can there be, in criminal proceedings,

---

[3] In fact, the Petitioner testified that he did not receive a copy of his indictment until after he was convicted. (Entry 23-4 at 43.)

[4] At the PCR hearing, the Petitioner testified that he did not have adequate notice of the charges against him prior to turning down the plea offer. (Entry 23-4 at 44.)

15

due process of law, where the accused is not thus informed, and that the information which he is to receive is that which will acquaint him with the essential particulars of the offense, so that he may appear in court prepared to meet every feature of the accusation against him."); U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . .").

Next, aside from the issue of notice, it also appears that counsel's deficient performance–which stemmed from his lack of preparation–prejudiced the Petitioner's basic right to a fair trial. First, counsel's initial trial strategy–to obtain a continuance–was not a valid strategy. Next, counsel's subsequent strategy–to poke holes in the State's case–does not withstand scrutiny based on counsel's admission that he was not prepared to proceed to trial or to cross-examine the state's witnesses. Stated differently, prior to trial, counsel had not obtained a complete copy of the discovery; counsel did not have, for example, copies of both search warrants, the marked money, or the indictments. Counsel did not see the drug evidence prior to trial and failed to object to its admission even though it had changed form from a rock-like substance to a watery mix.[5] See State v. Hayden, 268 S.C. 214, 219, 232 S.E.2d 889, 891 (1977) ("Before a physical object connected with the commission of a crime may properly be admitted in evidence there must be a showing that

---

[5] In its final order, the PCR court found that "counsel articulated valid strategic reasons for not objecting to the drugs and the marked money." (Entry 23-6 at 12.) A review of counsel's testimony from the PCR hearing, however, shows this to be inaccurate. For example, with regard to the drugs, when asked whether he had "any reason that you didn't make an objection that it wasn't in substantially the same condition," counsel testified, "no, ma'am." (Entry 23-4 at 158.) Counsel further testified that he should have objected to the State's closing arguments, where the prosecutor said that the drugs decomposed and melted. Counsel states, "Yes, I should have. I should have raised holy–you know, I should have objected. . . I think by the time that all came about, I was so physically beaten down because of the fact that we were being pushed hard by Judge Early." (Id. at 147.)

16

such object is in substantially the same condition as when the crime was committed."). Counsel received only one of four statements offered by a co-defendant, the same co-defendant who appeared on the State's witness list on the day of trial. Yet counsel failed to object to the State's introduction of all four statements. Moreover, with regard to the marked money, counsel admitted that he should have objected based on the chain of custody.

In all, the Court finds that counsel's errors and omissions caused prejudice to the Petitioner. This is not to say that the Petitioner necessarily would have been acquitted but for counsel's errors; rather, it is to say that the impact of counsel's deficiencies significantly undercut the reliability of the trial process such that the Petitioner's right to a fair trial was prejudiced. In so finding, the Court agrees with portions of the PCR court's initial order from April of 2011, wherein the PCR court stated that the Petitioner "was prejudiced as a result of counsel's failure to object to marked money and the co-defendant's statements since this evidence was used to directly tie the [Petitioner] to the drug transaction at issue." (Entry 23-5 at 110.) As the PCR court further noted in its first order, "[w]ithout this evidence, the State would have had to rely heavily on the testimony of the confidential informant, which counsel admitted should have been more thoroughly cross examined on his criminal record." (Id.)[6]

With regard to counsel's cross-examination of the confidential informant, counsel never obtained a copy of the confidential informant's criminal record prior to trial. Moreover, counsel's performance was deficient when he opened the door to highly

---

[6] The PCR court appears to have included this language from the Petitioner's proposed order. (See Entry 23-5 at 143.)

17

prejudicial testimony from the confidential informant. See State v. Culbreath, 377 S.C. 326, 333-334, 659 S.E.2d 268, 272 (S.C. Ct. App. 2008) ("In this case, the State did not submit any evidence regarding Culbreath's prior drug transactions and specifically instructed Gaines not to discuss prior drug transactions between him and Culbreath. . . . We find the defense opened the door to the references made about Culbreath's prior drug dealings with Gaines."). Here, although the PCR court agreed that counsel's performance was deficient with regard to his cross-examination of the confidential informant, the PCR court ultimately found that the Petitioner was not prejudiced by the deficient performance. Again, the Court disagrees. As the PCR court stated in its first order, "[a]s a result of defense counsel's cross-examination, the jury was provided with testimony regarding prior bad acts and bad character that would have amounted in a mistrial if it was elicited by the State." (Entry 23-5 at 110.)[7]

Accordingly, the Court finds that trial counsel's performance was deficient and that counsel's errors prejudiced the Petitioner. In determining that the Petitioner could not prove prejudice even if he could prove deficient representation, the PCR court relied on the "overwhelming evidence of guilt," and referred specifically to the recovery of the money and the drugs and the testimony of the confidential informant and the co-defendant. (Entry 23-6 at 15.) The problem with the PCR court's reliance on this alleged "overwhelming evidence of guilt," however, is that counsel made critical errors with respect to all of it, and but for counsel's errors, it is not clear whether this evidence would have been admitted. See Strickland, 466 U.S. at 686 ("The benchmark for judging any claim of ineffectiveness must

---

[7] Again, the PCR court appears to have included this language from the Petitioner's proposed order. (See Entry 23-5 at 145.)

be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.").

Ultimately, counsel hoped to obtain a continuance of the trial, but he was not able to do so, and when the trial proceeded, he was not prepared to effectively represent the Petitioner. Not only does it appear that the Petitioner was not sufficiently informed of the charges against him prior to rejecting a plea offer and proceeding to trial (as the record indicates that he did not see a copy of his indictments prior to trial, and he testified that he did not understand the nature of the charges before rejecting the plea offer and proceeding to trial), but also, counsel's errors, which stemmed from his lack of preparedness and his failure to raise critical objections, effectively prejudiced the Petitioner's right to a fair trial. Therefore, the Court respectfully declines to adopt the Magistrate Judge's R&R on the Petitioner's first three grounds and instead finds that trial counsel's performance was constitutionally deficient, thereby entitling the Petitioner to a writ of habeas corpus.

## II.     Ground Four: PCR Appellate Counsel's Alleged Ineffective Assistance

As his fourth ground for relief, the Petitioner contends that his PCR appellate counsel was ineffective, and he cites Martinez v. Ryan, in support. – U.S. –, 132 S.Ct. 1309, 1315 (2012). As the Magistrate Judge noted, however, § 2254(i) specifically provides that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). In addition, to the extent the Petitioner's claim involves an alleged deficiency in the PCR process, the claim is not cognizable on federal habeas review. See Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988) (holding that errors in connection with post-conviction proceedings are not cognizable on federal habeas

19

review). Moreover, the Court agrees with the Magistrate Judge that Martinez has no bearing on this case as the Respondent conceded that the Petitioner exhausted grounds one, two, and three of his petition. Accordingly, ground four does not support any relief, either as a free-standing claim or an argument for excusing a default.

## CONCLUSION

After review, therefore, the Court declines to adopt the Magistrate Judge's R&R as to the Petitioner's first three grounds and instead finds that the Petitioner is entitled to habeas corpus relief based on trial counsel's ineffective assistance. However, the Court affirms the Magistrate Judge's R&R with respect to the Petitioner's fourth ground. Accordingly, it is hereby

**ORDERED** that the R&R (Entry 47) is adopted only with respect to ground four; the Respondent's motion for summary judgment (Entry 22) is denied with respect to grounds one, two, and three and granted with respect to ground four. The Petitioner's objections (Entry 53) are sustained in part, and the Court grants a writ of habeas corpus and vacates the Petitioner's conviction for the reasons set forth in this order. To the extent the Respondent seeks to appeal this decision to the Fourth Circuit Court of Appeals, the Court will consider, on motion, a stay of this order pending the completion of the appeal.

**AND IT IS SO ORDERED.**

*[signature]*
PATRICK MICHAEL DUFFY
United States District Judge

June 20, 2016
Charleston, South Carolina